## ALVAN W. FOSS *vs.* HORACE T. HILDRETH.

Under Gen. Sts. *c.* 140, § 5, after a conditional judgment has been entered in an action to foreclose a mortgage, the court may submit to a jury a disputed question of fact as to the amount due on the mortgage.

If in such case the mortgage note bears an indorsement of $900, and the question in dispute is, whether that sum ought to be deducted or not, the submission to the jury of the following issues is unobjectionable: "Was the sum of $900 paid and received on said note ? Was anything received or accepted on said note in satisfaction of the sum of $900 ? "

If the indorsement was made upon the settlement of an action of slander brought by the defendant against the plaintiff, for charging the defendant with keeping a gambling-house and a house of ill fame, and the settlement was effected while the plaintiff was drunk, by means of threats to arrest him on the writ, the plaintiff, for the purpose of showing his mental condition at the time, may prove that he had been drunk for a great part of the time for several weeks, at the defendant's house and with his knowledge. So also he may prove that the defendant in fact kept a gambling-house and a house of ill fame.

In an action for slander the truth of the words spoken is a justification, although they were spoken maliciously, and without any reason to suppose that they were true.

If a person has been induced by duress or fraud to settle a groundless suit against him, by indorsing a sum of money upon a note which he holds against the plaintiff therein, and he has taken a discharge of the suit, it is not necessary for him to give notice or to return the discharge, in order to entitle himself to avoid his contract.

A threat to arrest the defendant in an action for slander is a threat to make an unlawful arrest; and a contract procured by means of such a threat, if found by the jury to be sufficient to overcome the mind and will of a person of ordinary firmness, may be avoided.

CHAPMAN, J. This is a writ of entry to foreclose a mortgage which was given to secure a note of $1600, dated July 26th 1858, and payable on demand with interest. After default the defendant moved for a conditional judgment. Several indorsements appeared upon the note, among which was one of $900 and this indorsement was the only matter in controversy. The plaintiff contended that it was not properly made, and ought not to be deducted, and upon his motion the presiding judge ordered

the following issues to be tried by a jury, namely, "Was the sum of $900 paid and received on said note? Was anything received or accepted on said note in satisfaction of the sum of $900?"

The defendant excepts to this order and direction of the judge, on the ground that the questions submitted to the jury ought to have been decided by the court, and cites Gen. Sts. *c.* 140, § 5, in support of this exception. It is there provided that "the court shall inquire and determine how much is due to the plaintiff on the mortgage." But in *Slayton* v. *McIntyre*, 11 Gray, 275, it was held that the judge might make this inquiry by a jury, if there was any fact in controversy that he might deem of such a character as to require the intervention of a jury. It is of much practical importance that he should possess this power. The defendant further contends that the issues as framed were not pure issues of fact, and that they were put in such a form that they tended to mislead the jury. But we see no valid ground for this objection.

The indorsement has no date, but the evidence tended to show that it was made on the 27th of February 1863. All the evidence which was admitted is reported in the bill of exceptions. It was offered by the plaintiff, and the case was submitted to the jury without the offer of any evidence on the part of the defendant. The general object of the evidence was to establish the following facts: The plaintiff, who is an inhabitant of New Hampshire, came to the defendant's house in Natick about the first of February 1863. It was a public house of entertainment, and called the Lake Shore House. The plaintiff repeatedly requested the defendant to pay him a part of the money due on the note; but the defendant made excuses and delayed payment. On the 23d of February the defendant sued out a writ against the plaintiff for slander, in calling his house a gambling-house and a house of ill fame, laying his damages at five thousand dollars. On the 27th of February he procured a deputy sheriff named Bannister to come to his house, and put the writ into his hands. Bannister went to the plaintiff's room in the morning, where he was shaving himself, and pretended that he

was going to commit him to jail. The defendant and Bannister then went with the plaintiff to the office of the defendant's attorney, where the action and the defendant's claim for slander were settled, and were discharged by the defendant, and in consideration of this settlement and discharge the indorsement of $900 was made on the note. The plaintiff had been staying at the defendant's house, and had been for a great part of the time in a state of intoxication, and was so at the time of the settlement. The action was groundless, and the settlement was procured by fraud and duress, and was made while the plaintiff was in such a condition as to be incompetent to make a valid agreement. Some of the evidence which was offered to sustain these positions was objected to.

1. It was objected that the evidence was inadmissible which was offered to prove that the plaintiff had been intoxicated prior to the day of the settlement and indorsement. But this evidence tended, in connection with the evidence as to his intoxication on that day, to show what his mental condition then was. The jury would be able to judge, from their own observation and knowledge, of the extent to which it had affected and weakened his mind, and rendered him imbecile. And as the liquor was obtained at the defendant's house and with his knowledge, the evidence had some tendency to show, in connection with other circumstances, that the action of slander was groundless, and that the claim and settlement were fraudulent on the part of the defendant.

2. It was objected that the evidence was inadmissible which tended to prove that the defendant did in fact keep a house of ill fame and a gambling-house. But inasmuch as the evidence tended to prove the truth of the words which the defendant was charged with having spoken, it tended to show that they were not slanderous, and that the defendant's action was groundless. And as it tended to prove that the defendant knew the words to be true, and therefore knew that his action was groundless, it tended to show that his claim was fraudulent, and was got up with a view to avoid the payment of his note. The evidence was therefore pertinent and admissible.

After the evidence was in, the defendant's counsel requested the court to instruct the jury that there was no competent evidence of duress, fraud or intoxication. The evidence being reported to us, we are all of opinion that it was competent for the jury to find upon it that there were fraud, duress and intoxication, sufficient to make the transaction void. The plaintiff testified in the case, and it is contended that his statements are not worthy of credit. But the credit of a witness is a question for the jury, and not for the court; and the jury would be likely to be influenced by the fact that neither the defendant nor Bannister nor the defendant's attorney was called to contradict his statements; but they were all left uncontradicted, and they were also corroborated by other evidence.

The defendant's counsel further requested the court to instruct the jury that the evidence was not sufficient or competent to prove that the defendant kept a gaming-house or a house of ill fame. The court are of opinion that the evidence as reported is sufficient to prove that the defendant kept a public house with the intent that it should be resorted to by prostitutes for the purpose of prostitution and by gamblers for gaming, and thereby to increase his profits; and that it was so resorted to with his knowledge. The details are too indecent to be stated. The transactions which appear in evidence were so open and notorious that the jury could hardly suppose the defendant really felt aggrieved or injured by having his house called a house of ill fame and a gambling-house.

The defendant's counsel requested the court to give certain instructions to the jury, as stated in the bill of exceptions. One of the instructions prayed for was, that the truth is not a defence to an action of slander, if the words were spoken maliciously or without any reason on the part of the defendant to believe they were true. But in respect to verbal slander the law has always been otherwise. A special plea in justification sets forth the truth of the words merely. 3 Chit. Pl. 1031.

The instructions that were given in respect to the degree of imbecility or intoxication which must exist in order to avoid a contract were in substantial conformity to those prayed for.

The jury were also instructed that the contract was voidable and might be avoided. They were not instructed that it was necessary to give notice to the defendant or to return the discharge, in order to avoid the contract. No such acts were necessary. The discharge is not property of any value to the defendant, nor is it of any use to the plaintiff.

It is also true that where a person *non compos mentis* makes a deed and receives a valuable consideration for it, he or his guardian may avoid it without first returning the consideration. *Gibson* v. *Soper,* 6 Gray, 279.

The instructions in regard to duress were also correct. These instructions were that a threat to make an arrest upon the writ for slander would be a threat to make an unlawful arrest; and that an acknowledgment obtained under terror of an unlawful arrest, such as under all the circumstances was sufficient to overcome the mind and will of a person of ordinary firmness, might be avoided. By Gen. Sts. *c.* 124, § 3, it is provided that no person shall be arrested on mesne process in a civil action for libel or slander; and the threat to commit the plaintiff to jail unless he settled the action was for the evident purpose of leading him to believe that he was in the custody of the officer, and extorting the indorsement from him in order to obtain a release.

The whole evidence being reported to us, we are satisfied that the verdict is right. *Exceptions overruled.*

*C. R. Train & J. W. Bacon,* for the defendant.

*T. H. Sweetser & W. S. Gardner,* for the plaintiff.